Miss Marie Eugenie Bertrand and Miss Leonora Clara Del Bondio brought this suit against the Succession of Mrs. Leonora Hassinger, widow of G.A. Blaffer, represented by the duly qualified testamentary executor, The National Bank of Commerce in New Orleans, claiming $1,975 as the balance which, they allege, Mrs. Blaffer, before her death, agreed to pay on a note executed by them, secured by a deed of trust on real estate owned by them jointly. They allege that they would not have executed the note if Mrs. Blaffer had not told them to do so and had not said that she would pay it.
Since the filing of the suit, Miss Del Bondio has died and Eaton Adlai Lang has been qualified as executor of her succession, and has been substituted for her as party plaintiff.
The defense is a general denial.
From a judgment for defendants, plaintiffs have appealed.
The record shows that Miss Del Bondio, a niece of Mrs. Blaffer, lived for many years in Pass Christian, Miss., in property owned by Miss Del Bondio, and that being an invalid she had as her nurse and companion Miss Bertrand. These two women lived together for more than fifteen years. Prior to 1934, their living expenses came from funds of Miss Del Bondio, but in 1934, Miss Del Bondio discovered that her funds had been exhausted and she called upon her aunt, Mrs. Blaffer, for help. Mrs. Blaffer responded generously, and from 1934 until her death on March 23, 1940, she sent to Miss Del Bondio or to Miss Bertrand, for the use of the two ladies, $300 per month in semi-monthly installments of $150 each, and often made additional contributions.
In the early part of 1940, the two ladies in Pass Christian discovered that in spite of the generosity of Mrs. Blaffer, they had accumulated debts amounting to $2,000 and had no funds with which to make payment. In this situation, at the request of Miss Del Bondio, Miss Bertrand had two telephone conversations with Mrs. Blaffer, who was in New Orleans, relative to securing from her further assistance. Miss Bertrand testified that Mrs. Blaffer said that she had no ready cash available but that if they, Miss Del Bondio and Miss Bertrand, could themselves borrow the necessary money on a loan to be repaid monthly, she, Mrs. Blaffer, would make the monthly payments for them and would retire the entire loan within six months. The necessary loan was arranged with a savings and loan association *Page 387 
in Pass Christian. The real estate which was used as security had belonged to Miss Del Bondio but had been partially transferred by her to Miss Bertrand, Miss Bertrand says, under a deed which provided that after the death of either, the survivor should become vested with full ownership.
Miss Bertrand testified that when the first installment on the $2,000 note became due, Mrs. Blaffer, in addition to the regular $150 semi-monthly contribution, added $25 to be used in paying that monthly installment on the note. This payment, $25, was made on the loan, reducing it to $1,975. A few days later Mrs. Blaffer died, and no further payments were made by her or her estate, and this suit is now brought to compel the Executor of her estate to pay this balance.
Miss Bertrand says that when Mrs. Blaffer remitted the $25 to be used in making the monthly payment on the $2,000 note, she sent a check with a letter, which letter is produced and which reads as follows:
"Dear Doonie:
"As I promised yesterday, I am sending you the allowance with the Mortgage Note that you have to pay monthly, that you said would be $22.50. As I have to pay that, I felt I would take off the $15.00 I have been giving Muggie, for I thought she should help to make the sacrifice, and try to save something out of the $3.00 I send her monthly. Enclosing 150.00 for allowance 25.00 " Mortgage Note ------- $175.00"
"Doonie" was the nickname by which Mrs. Blaffer called Miss Bertrand and "Muggie" was her pet name for Miss Del Bondio.
When this letter was offered in evidence, counsel for defendant objected to its admission on the ground that it had not been signed by Mrs. Blaffer. They base this objection upon Section 2 of Act 11 of 1926, which section reads as follows:
"That parol evidence shall be incompetent and inadmissible to prove any debt or liability upon the part of a party deceased, if a suit upon the asserted indebtedness or liability shall have been brought within a delay of twelve (12) months after the death of the deceased, unless it consists of the testimony of at least one credible witness of good moral character, besides the plaintiff; or unless it be to corroborate a written acknowledgment or a promise to pay, signed by the debtor."
The objection was sustained by the District Court and there being then before the court no evidence showing that Mrs. Blaffer had agreed to make the payments, except the testimony of Miss Bertrand, there was judgment dismissing the suit.
Counsel for defendant maintains that even if this letter should be considered, it need not necessarily be interpreted as an acknowledgment by Mrs. Blaffer of a promise to pay the entire debt, and they point out certain circumstances which they say indicate that Mrs. Blaffer did not intend to pay the entire debt but was willing to make only the first payment.
Whatever may have been Mrs. Blaffer's real intention, we are not permitted to attempt to learn it by considering that unsigned document. The statute from which we have quoted is so clear that it requires no interpretation. It provides plainly that even when a suit is brought within twelve months of the death of the deceased person, as this one was brought, and is based on an alleged debt or liability of a deceased person, the testimony of the plaintiff is "incompetent and inadmissible" unless supported by the testimony "of at least one * * * witness besides the plaintiff (and there was no other witness) or unless it be to corroborate a written acknowledgment or promise to pay, signed by the debtor." It is not sufficient that the acknowledgment be written, it must also be signed by the debtor (deceased).
It is true that the record shows that in all probability the document was written by Mrs. Blaffer, for her handwriting is identified by persons who were familiar with it, but as we have said, this is not sufficient since there is no signature.
It necessarily follows that the testimony of the plaintiff, Miss Bertrand, is "incompetent and inadmissible" and hence there is in the record no competent proof that Mrs. Blaffer ever agreed to make the payment for which this suit is brought. Counsel for plaintiffs maintain that we should give a liberal interpretation to the document which is offered in evidence, and to the statute. We know of no reason why this should be done, but even conceding that there are sound reasons which in such a situation should prompt a court to liberally interpret such a document, it must be *Page 388 
remembered that the document must first be admissible before it can be subjected to interpretation and, because of the statute, as we have already said, it is obvious that this document is not admissible; consequently.
The judgment appealed from is affirmed at the cost of appellants.
Affirmed.